**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

Apriel Williams, *et al.*,

                              Plaintiffs,          Case No. 24-12905

v.                                                 Judith E. Levy
                                                   United States District Judge
Churchill Mortgage Corporation,

                              Defendant.           Mag. Judge Elizabeth A.
                                                   Stafford

_____/


**ORDER GRANTING IN PART AND DENYING IN PART**
**CHURCHILL MORTGAGE CORPORATION'S MOTION FOR**
**JUDGMENT ON THE PLEADINGS [36]**

Before the Court is Defendant/Counter-Plaintiff Churchill

Mortgage Corporation's motion for judgment on the pleadings. (ECF No.

36.)

On September 11, 2025, Apriel Williams and Bryan Poe filed suit

against Churchill Mortgage Corporation ("Churchill") in Wayne County

Circuit Court, alleging that Churchill failed to meet its obligations

related to a construction loan. (ECF No. 1-2.) Churchill filed a notice of

removal for that case on November 1, 2024. (ECF No. 1.) Churchill also

filed a counterclaim against Williams and Poe, alleging that they had breached the terms of the loan. (ECF No. 4.)

On February 3, 2025, DAG Construction, LLC ("DAG") filed a separate suit against Churchill, also in Wayne County Circuit Court, alleging that DAG was harmed as the intended third-party beneficiary of the construction loan when Churchill failed to provide funding under the loan agreement. (ECF No. 18-1.) Churchill filed a notice of removal in that case on March 3, 2025. (ECF No. 16.)

Williams and Poe and DAG's cases were consolidated on March 11, 2025. (*Id.*)

For the reasons set forth below, Churchill's motion for judgment on the pleadings (ECF No. 36) is granted in part and denied in part. Williams and Poe and DAG's claims are dismissed in their entirety. The Court declines to enter judgment on Churchill's claims against Williams and Poe.

## I.    Background

On January 29, 2024, Plaintiffs/Counter-Defendants Apriel Williams and Bryan Poe entered into a Residential Construction Loan Agreement ("Loan Agreement") with Defendant/Counter-Plaintiff

2

Churchill for the purpose of financing the construction of a home in Taylor, Michigan. (ECF No. 1-2, PageID.10.) Plaintiff DAG was the construction company on this project. (ECF No. 18-1, PageID.168.) Williams and Poe allege that the Loan Agreement "provided that [Churchill] would disburse funds to Plaintiffs for the construction of the improvements in stages, with each stage requiring the submission of a draw request by [Williams and Poe] or [DAG]." (ECF No. 1-2, PageID.10.) They also allege that "[Churchill] had an obligation to prepay the construction draws for each stage of the project upon submission and approval of the draw request and supporting documentation." (*Id.*)

On January 29, 2024, Churchill issued Plaintiffs $80,000.00 as the first disbursement under the Loan Agreement. (ECF No. 1-2, PageID.10; ECF No. 18-1, PageID.168.) Williams and Poe claim that this constituted the "funds for Stage 1" and that Churchill issued this money as a prepayment for Stage 1 of the construction project "as agreed under the terms of the Loan Agreement." (ECF No. 1-2, PageID.10.)

Williams, Poe, and DAG allege that Churchill refuses to prepay the draw for the next stage of the construction project, Stage 2, despite their full compliance with the Loan Agreement. (*Id.*; ECF No. 18-1,

PageID.170.) Because Churchill has not funded the next stage of the project, they have suffered monetary damages. (ECF No. 1-2, PageID.10–11; ECF No. 18-1, PageID.170.)

## II.    Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is assessed "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)." *Moderwell v. Cuyahoga Cnty.*, 997 F.3d 653, 659 (6th Cir. 2021). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Jackson v. Pro. Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.*

(quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

## III.   Analysis

Churchill argues that all claims pending against it should be dismissed because it is not in breach of the Loan Agreement. (ECF No. 36, PageID.398.) Churchill also contends that DAG may not bring suit because it is not an intended third-party beneficiary of the Loan Agreement. Finally, Churchill moves for judgment on its counterclaim against Williams and Poe for breach of contract. (ECF No. 36, PageID.406; ECF No. 4, PageID.99 (counterclaim).)

Federal Rule of Civil Procedure 10(c) states, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." The "pleadings" include both complaints and answers. Fed. R. Civ. P. 7(a). It is undisputed that a copy of the Loan Agreement is attached to Williams and Poe's complaint (ECF No. 1-4), as well as to Churchill's counterclaim/answer to Williams and Poe's complaint. (ECF No. 4-1.) DAG's complaint references the Loan Agreement, and Churchill's answer to DAG's complaint also incorporates the Loan Agreement. (ECF No. 19, PageID.217.) As such, the Court may consider

the Loan Agreement during its consideration of Churchill's motion for judgment on the pleadings regarding William and Poe's claims, DAG's claims, and Churchill's claims, because the Loan Agreement is integral to all claims.

### A. Choice of Law

As an initial matter, the Court must determine what law governs the merits of this dispute. In diversity actions, courts use state law to determine the meaning and validity of contract agreements. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 541 (6th Cir. 2007). "When interpreting contracts in a diversity action, we generally enforce the parties' contractual choice of forum and governing law." *Id.*

The Court has diversity jurisdiction over this case. (ECF No. 1, PageID.3–4.) Pursuant to the terms of the Loan Agreement,[1] the dispute is governed by the laws of Michigan. (ECF No. 1-4, PageID.29.) None of the parties dispute that Michigan law governs the Loan Agreement. As such, the Court will use Michigan law to interpret the Loan Agreement.

---

[1] The Loan Agreement states, "[t]his Loan Agreement shall be governed by the laws of the State where the Property is located without regard to principles of conflict of laws." (ECF No. 1-4, PageID.29.) It is undisputed that the property is in Michigan.

## B. DAG Construction

First, Churchill argues that DAG Construction "cannot state a claim for breach of the Loan Agreement" because DAG "is not an intended third-party beneficiary of that agreement." (ECF No. 36, PageID.399 n.2.)

Pursuant to Michigan Comp. Laws § 600.1405, "only intended, not incidental, third-party beneficiaries may sue for a breach of a contractual promise in their favor." *Schmalfeldt v. N. Pointe Ins. Co.*, 469 Mich. 422, 427 (2003) (citing Mich. Comp. Laws § 600.1405; *Brunsell v. Zeeland*, 467 Mich. 293, 296 (2002)). "A person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person." *Id.* at 428. "[A] court should look no further than the form and meaning of the contract itself to determine whether a party is an intended third-party beneficiary within the meaning of [Mich. Comp. Laws § 600.1405]." *Id.*

The Loan Agreement contains a section titled "Limitation on Beneficiaries," which states:

> This Agreement is made by you for our sole benefit, and no other person shall be deemed to have any privity of contract hereunder, nor any right of action hereon. Without limiting the generality of the foregoing, any disbursement that may be made by us hereunder directly to the Contractor or any subcontractor or supplier shall not

be deemed a recognition by us of a third-party beneficiary status of any such party or entity.

(ECF No. 1-4, PageID.29.) The Loan Agreement defines "Contractor" as "Dag Construction." (*Id.* at PageID.21.)

The Court agrees that the Loan Agreement explicitly establishes that DAG is not an intended third-party beneficiary.[2] As such, DAG may not sue Churchill for breach of contract and its claim must be dismissed in its entirety.

### C. Williams and Poe

Next, Churchill argues that Williams and Poe's claims also fail because it complied with the terms of the Loan Agreement.

The Counts set forth in Williams and Poe's complaint are as follows:

- Rescission of Contract and Refund of Payments (Count I)
- Breach of Contract (Count II)
- Anticipatory Breach of Contract (Count III)
- Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV)
- Request for Specific Performance (Count V)
- Freeze or Escrow Project Funds (Count VI)

---

[2] DAG did not address this argument in its response brief. (*See* ECF No. 39.) However, it alleges in its complaint that it is an intended third-party beneficiary. (ECF No. 18-1, PageID.170.)

8

- Unjust Enrichment (Count VII)
- Request for Stay of Loan and Interest Payments During the Pendency of this Lawsuit (Count VIII)

(ECF No. 1-2, PageID.11–14.) The Court will not address Counts I, V, VI, and VIII because they appear to be requests for specific remedies or relief, not independent causes of action. *Turaani v. Sessions*, 316 F. Supp. 3d 998, 1015 (E.D. Mich. 2018); *Thomas v. United States*, No. 1:14 CV 2184, 2016 WL 6902357, at *9 (N.D. Ohio Sept. 26, 2016) ("A request for damages is not an independent cause of action.").

Additionally, the Court will not address Plaintiffs' Count IV because "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *In re Leix Est.*, 289 Mich. App. 574, 591 (2010) (quoting *Dykema Gossett PLLC v. Ajluni*, 273 Mich. App. 1, 13 (2006), *vacated in part on other grounds* 480 Mich. 913 (2007). As such, the only claims brought by Williams and Poe are breach of contract (Count II), anticipatory breach of contract (Count III), and unjust enrichment (Count VII).

      *i.*    *Breach of Contract & Anticipatory Breach of Contract*

"Michigan law requires a party claiming a breach of contract to prove the existence and terms of a contract, that the defendant breached

9

its terms, and that the breach caused damages to the plaintiff." *Van Buren Charter Twp. v. Visteon Corp.*, 319 Mich. App. 538, 554 (2017). It is undisputed that the parties entered into a contract: the Loan Agreement. As such, the Court must determine the terms of the Loan Agreement.

"If the language of the contract is unambiguous, [the Court must] construe and enforce the contract as written." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (2003). "[A]n unambiguous contractual provision is reflective of the parties' intent as a matter of law. Once discerned, the intent of the parties will be enforced unless it is contrary to public policy." *Id.*; *see also Rayford v. Am. House Roseville I, LLC*, __ N.W.3d __, No. 163989, 2025 WL 2177754, at *4 (Mich. July 31, 2025) (listing equitable defenses to contracts such as "unconscionability, duress, fraud, waiver, estoppel, and violations of public policy").

The Loan Agreement states,

The amount of each disbursement shall be based on the value of the work completed (WORK IN PLACE ONLY) and approved by us. The disbursement will be calculated on the work actually completed less the total of all monies previously drawn . . . IF THE PROGRESS OF THE WORK IN PLACE IS NOT CONSISTENT

10

WITH THE DRAW SCHEDULE, WE WILL DISBURSE ONLY THE AMOUNT OF FUNDS THAT WE DETERMINE, IN OUR SOLE AND ABSOLUTE DISCRETION, IS APPROPRIATE BASED ON OUR INSPECTION OF THE PROGRESS OF THE WORK. Any advance that may be made by us prior to the fulfillment by you of any requirements specified by us or of any condition precedent set forth in this Loan Agreement . . . shall not be deemed a waiver of our right to have such requirement or condition precedent fulfilled prior to making subsequent disbursements.

(ECF No. 1-4, PageID.23.) Churchill contends that the Loan Agreement unambiguously states that the disbursements are based on work completed and that the Loan Agreement states explicitly that it does not require prepayment of work not yet completed.

Williams and Poe argue that the terms of the Loan Agreement are "ambiguous regarding whether disbursements were to be prepaid or arrears-based." (ECF No. 40, PageID.427.) They note that "[t]he 'Stage Draws' section specifies five stages but does not state whether each stage is to be funded in advance or after completion." (*Id.*)[3] They also note that the "Draw Schedule itself references categories such as mobilization,

---

[3] Williams and Poe do not provide a citation to the record regarding the section of the Loan Agreement they reference. The Court assumes they reference ECF No. 1-4, PageID.31, which is a section titled, "Construction Draw Schedule," which describes that there will be 5 "Stage Draws" with "Inspections ordered upon submission of draw request."

11

permitting, and site work, which logically require upfront funding." (*Id.* at 428.)

The Loan Agreement is not ambiguous. Its statement that "[t]he amount of each disbursement shall be based on the value of the work completed" is incompatible with Plaintiffs' view of the contract. (ECF No. 1-4, PageID.23.) Because "each disbursement" refers to every disbursement, including the first disbursement, it is not possible that Churchill was contractually obligated to issue the first disbursement before any work had been completed. References to work that must be completed before disbursements are released do not create a contradiction. While arduous, it is possible for a contract to require work to be done first, and then for that work to be reimbursed upon completion.

Williams and Poe also argue that this interpretation of the Loan Agreement is not clear because Churchill issued the first disbursement in advance of any work being performed. (ECF No. 40, PageID.427–428 ("Churchill's initial prepayment supports Plaintiffs' understanding that the contract allowed or required prepayment.").) That Churchill issued the first disbursement before any work had been completed is not dispositive.

First, "where the terms of a contract are unambiguous, their construction is for the court to determine as a matter of law, and the plain meaning of the terms may not be impeached with extrinsic evidence." *Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 604 (1997) (internal citations omitted). Here, Poe and Williams argue that the Agreement is ambiguous and "[t]he contradictions between the Agreement, the Draw Schedule, and Churchill's conduct create ambiguity." (ECF No. 30, PageID.428.) However, the Court has determined that the terms of the contract are unambiguous. Additionally, Plaintiffs do not explain or cite caselaw that suggests that the course of performance can "create ambiguity" in the reading of a contract.[4]

Second, the terms of the Loan Agreement explicitly state that "[a]ny advance that may be made by us prior to the fulfillment by you of any

---

[4] In fact, the Michigan Court of Appeals has repeatedly stated otherwise. *See In re Elizabeth L. Vogt Living Tr.*, No. 363447, 2023 WL 5315333, at *4 (Mich. Ct. App. Aug. 17, 2023) ("[I]t is well established that a course of conduct inconsistent with the plain language of an agreement does not create an ambiguity if the agreement is otherwise clear.").

Poe and Williams' citation to *McIntosh v. Groomes*, 227 Mich. 215 (1924), is not convincing because the contract in that case was determined to be ambiguous and "of doubtful and uncertain meaning." *Id.* at 219. As such, the *McIntosh* court referred to the partial performance of the contract to help interpret the correct meaning. Here, the language of the Agreement is not ambiguous.

requirements specified by us or of any condition precedent set forth in this Loan Agreement . . . shall not be deemed a waiver of our right to have such requirement or condition precedent fulfilled prior to making subsequent disbursements." (ECF No. 1-4, PageID.23.) In short, the Loan Agreement itself states that any disbursement issued in advance does not create an obligation regarding future disbursements.

Finally, to the extent Poe and Williams argue that the contract should not be enforced as a matter of public policy or because it is unconscionable, (ECF No. 40, PageID.429 (citing *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 546 (9th Cir. 1989)), the Court disagrees. They argue that they "are ordinary homeowners, not commercial builders or institutional lenders" and "Michigan courts recognize that adhesion contracts drafted by sophisticated parties warrant close scrutiny when applied to lay consumers." (*Id.*) Plaintiffs contend that the Loan Agreement "is a boilerplate, lender-drafted agreement riddled with internal inconsistencies," (*id.*), but do not define "adhesion contracts," nor do they sufficiently explain why the Loan Agreement should be considered an adhesion contract, unconscionable, or against public policy.

14

Without this, the Court is unable to conclude that the Loan Agreement should not be enforced.

For the reasons set forth above, Williams and Poe's breach of contract and anticipatory breach of contract claims must be dismissed.

        *ii.   Unjust Enrichment*

"Unjust enrichment is defined as the unjust retention of 'money or benefits which in justice and equity belong to another.'" *Tkachik v. Mandeville*, 487 Mich. 38, 47–48 (2010) (quoting *McCreary v. Shields*, 333 Mich. 290, 294 (1952)). Williams and Poe's complaint alleges that they "conferred a substantial benefit upon [Churchill] by entering into the Loan Agreement and facilitating the commencement of the construction project," and "[Churchill] has unjustly retained this benefit without fulfilling its obligations under the Loan Agreement, to the detriment of Plaintiffs." (ECF No. 1-2, PageID.13.) As set forth above, Williams and Poe have not sufficiently shown that Churchill violated the Loan Agreement. Additionally, because there is an express contract between Williams and Poe and Churchill regarding this same subject matter, Williams and Poe's unjust enrichment claims are barred. *See Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 194 (2006).

As such, Williams and Poe's unjust enrichment claim is dismissed.

### D. Churchill Mortgage

Finally, Churchill moves for judgment on its claim against Williams and Poe. Churchill brings one counterclaim against Williams and Poe: breach of contract. (ECF No. 4, PageID.99.) Churchill argues that it is entitled to judgment on the pleadings "because [Williams and Poe] failed to complete the project by the September 17, 2024 deadline," which is in violation of the Loan Agreement. (ECF No. 36, PageID.407.)

The Loan Agreement defines "Construction Completion Date" as September 17, 2024 "being the date on which the construction of the improvements must be completed in all material respects so as to permit us to make the final disbursement of the Loan Proceeds to you." (ECF No. 1-4, PageID.21.) Churchill contend that Williams and Poe's failure to complete construction by September 17, 2024 "is an event of default under paragraph 21(g) of the Loan Agreement," which states,

> The Events of Default shall include: . . . You default in the Construction Contract performing any other obligation contained in this Loan Agreement, the Note, the Security Instrument or other Loan Documents, or in any document issued under or provided for herein or which otherwise relates to the Loan, which default is not cured in the time period (if any) set forth in the appliable document[.]

(ECF No. 36, PageID.406; ECF No. 1-4, PageID.28.)

The Court declines to enter judgment for Churchill at this time. First, a plain reading of the Loan Agreement does not indicate that the Construction Completion Date is an obligation such that failure to complete construction by that date constitutes default. The Construction Completion Date is defined as a deadline that "permits" Churchill to issue the final disbursement. (ECF No. 1-4, PageID.21.) But it is not clearly stated that receiving the final disbursement is an obligation. In short, the Court finds that Churchill has not sufficiently explained the relationship between the Construction Completion Date and paragraph 21(g) of the Loan Agreement such that judgment is warranted.

Second, the Court is unable to find that, based on William and Poe's pleadings alone, Churchill's motion for judgment should be granted on its counterclaim. In evaluating a Rule 12(c) motion, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Jackson*, 864 F.3d at 466. Although it seems very likely that Williams and Poe did not complete construction of the home by September 17, 2024, the Court is unable to

determine that with certainty based on William and Poe's pleadings.[5] William and Poe's complaint was filed on September 11, 2024, which is before the Construction Completion Date had passed. (ECF No. 1-2.) William and Poe's answer to Churchill's counterclaim denies that they "breached the Agreement when they failed to complete construction by September 17, 2024" and that it "constitute[s] Event[] of Default under the Agreement." (ECF No. 4, PageID.99 (counterclaim); ECF No. 5, PageID.118–119 (answer).) Even taking all of Williams and Poe's pleadings as true, the Court cannot say with certainty that Churchill is entitled to judgment on the pleadings. Out of an abundance of caution, the Court declines to enter judgment against Williams and Poe at this time.

## IV.    Conclusion

For the reasons set forth above, Churchill's motion for judgment on the pleadings (ECF No. 36) is GRANTED IN PART AND DENIED IN PART. Judgment is entered in favor of Churchill regarding Williams and

---

[5] Churchill also claims that DAG's complaint also demonstrates that the project was not complete by September 17, 2024. (ECF No. 36, PageID.407.) But Churchill does not explain why entering judgment against Poe and Williams based on DAG's pleadings would be appropriate.

Poe's claims and DAG's claims. DAG's complaint (ECF No. 18) is DISMISSED WITH PREJUDICE. Williams and Poe's complaint (ECF No. 1-2) is DISMISSED WITH PREJUDICE.

Churchill's claim against Williams and Poe remains. Because this opinion and order does not close the case, the Court declines to enter an order regarding Churchill's request for attorney fees and costs.

IT IS SO ORDERED.

Dated: September 22, 2025           s/Judith E. Levy
Ann Arbor, Michigan                JUDITH E. LEVY
                                   United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 22, 2025.

                                   s/William Barkholz
                                   WILLIAM BARKHOLZ
                                   Case Manager